THE STATE, DEFENDANT IN ERROR, v. WALTER SCHUTTE, PLAINTIFF IN ERROR.

Argued June 2, 1914—Decided March 5, 1915.

1. A criminal assault may be committed with an automobile driven along a public street at an excessive rate of speed that endangers the safety of other persons and actually results in such an injury.
2. The driving of an automobile at an excessive rate of speed is a willful act likely to inflict injury from which the malice and intention to inflict injury which are the essentials of a criminal assault may, if the circumstances so warrant, be implied.

On error to the Hudson Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and MINTURN.

For the plaintiff in error, *William S. Stuhr.*

For the defendant in error, *Robert S. Hudspeth.*

The opinion of the court was delivered by

GARRISON, J. The plaintiff in error was convicted of assault and battery by "willfully and unlawfully" striking and wounding one Thomas Mitchell with an automobile as charged in the indictment.

Upon the trial before the judge of the Quarter Sessions, a jury having been waived, the allegations of the indictment were sustained by proof that the plaintiff in error ran his automobile through a city street at a rate of speed in excess of the rate permitted by section 23 of the Motor Vehicle act

and that endangered public safety and that actually resulted in the injury of a pedestrian.

The controversy of fact was over the rate of speed which was resolved by the trial court adversely to the plaintiff in error, a matter that we do not review. *State* v. *Jaggers,* 71 *N. J. L.* 281; *State* v. *Herron,* 77 *Id.* 523.

The legal controversy is whether or not upon the facts so found the conviction can be sustained, which was raised in the trial court by the denial of a motion to direct an acquittal.

Counsel for the plaintiff in error correctly contends that both the willful wrong doing that constitutes malice in the law and also an intention to inflict injury are of the essence of a criminal assault; and that, as a necessary corollary, mere negligence will not sustain a conviction for such crime. With these abstract propositions no fault is to be found, provided it is borne in mind that the necessary malice may be implied from the doing of an unlawful thing from which injury is reasonably to be apprehended and also that an intention to injure need not be specifically directed to the particular individual that was injured, but may be inferred in law from the consequences that are naturally to be apprehended as the result of the particular act, the doing of which was intentional. "The prisoner," said Chief Justice Lord Coleridge, in *Queen* v. *Martin,* 8 *Q. B. Div.* 54, "must be taken to have intended the natural consequences of that which he did. He acted unlawfully and maliciously, not that he had any personal malice against the particular individual injured, but, in the sense of doing an act calculated to injure, and by which others were, in fact, injured."

The facts of the case from which this language is quoted were that the defendant was in the gallery of a theater which was reached by a staircase lighted by gaslights, at the bottom of which was a pair of folding doors. At the end of the performance the defendant ran quickly down the stairs turning out, as he went, the gaslights on the middle and lower landing and closing with a bar the doors of exit, as a consequence of which there was a jam on the staircase in which several persons were injured. These facts and the language of the indictment

which is quoted render the exposition of the legal rules entirely applicable to the question before us.

Other cases illustrative of the same rules are *People* v. *Moorehouse*, 6 *N. Y. Supp.* 763; *Smith* v. *Commonwealth*, 100 *Pa. St.* 324; *People* v. *Raher*, 92 *Mich.* 165; *State* v. *Myers*, 19 *Iowa* 517; *Commonwealth* v. *Hawkins*, 157 *Mass.* 551; in which a large number of cases are cited.

The industry of counsel has not furnished nor have I been able to find a decided case in which the assault was committed with an automobile, a comparatively modern appliance, but the principles involved are as old as the criminal law itself. Indeed, counsel for the plaintiff in error does not seriously controvert these principles, but, on the contrary bases his argument, as I understand it, upon his other contention, viz., that a mere act of negligence will not sustain a conviction for assault and battery. For this proposition, which needs no external support, he cites as authority the *dictum* of Mr. Justice Dixon in *State* v. *Thomas*, 65 *N. J. L.* 598, who, in commenting upon the case of *State* v. *O'Brien*, 32 *Id.* 169, said: "Certainly, if death had not ensued from his negligence, but only personal injury, a charge of assault and battery could not have been sustained." The case of State *v.* O'Brien was a conviction of manslaughter under an indictment that charged that offence based upon the negligence of the defendant in the tending of a railroad switch, and State *v.* Thomas was a review of a conviction for assault and battery under an indictment for manslaughter, which it was held as a *matter of pleading* did not distinctly set forth the offence of which the defendant was convicted.

The *dictum* quoted went, therefore, far beyond the decision in that it dealt hypothetically with the substantive criminal law, whereas the decision was rested solely upon the degree of certainty required by the rules of criminal pleading.

The line of reasoning on which this *dictum* rested was that manslaughter based upon negligence and excluding malice had nothing in common with assault and battery, which necessarily includes malice. With the soundness of this reasoning we are not now concerned, since it has no foundation in fact

in the case before us in which we are not dealing with an indictment for manslaughter or with an assault and battery that resulted from negligence. On the contrary, we are dealing with a willful act done under circumstances that rendered likely the infliction of such an injury as that which actually resulted from it. In such a case to argue from the assumed premise that if death had occurred the crime would have been manslaughter is a complete begging of the question; in the very case referred to, *i. e.*, State *v.* O'Brien, Mr. Justice Dalyrmple was careful to say: "If the defendant's omission of duty was willful or, in other words, if his will concurred in his negligence, he was guilty of murder." The running of a car at a high rate of speed is an act in which the will of the driver concurs and hence is clearly a willful act as distinguished from merely negligent conduct when considered with respect to the state of mind of the offender, which is what the criminal law considers.

The civil law, on the contrary, disregards this distinction in awarding compensation in damages, and as is pointed out in *Evers* v. *Davis*, 86 *N. J. L.* 196, groups together both willful and negligent acts in its effort to compel tort-feasors to make compensation for injuries without regard to the state of mind with which they were inflicted. The civil action of negligence, therefore, throws no light upon the distinction made by the criminal law between a willful and a negligent act.

With this misleading test and the fallacious hypothesis of manslaughter out of the way, it requires neither argument nor illustration to show that the excessive rate of speed at which an automobile is driven is a product of the will of its driver and not the result of his mere inattention or negligence. The two cannot be confused any more than the hurling of a baseball bat into a crowd of spectators could be confused with its accidentally slipping from the hand of the batter. If a blow inflicted in the former manner would constitute an assault, so must a blow inflicted by a willful act applied to a much more dangerous agency, since it cannot be that what would be a crime if done with a plaything weighing a few ounces ceases to be a crime if committed with an engine weigh-

ing thousands of pounds driven by many horse powers of force. It has often been held that responsibility increases with the likelihood of injury, but never the reverse, that I am aware of.

There is, therefore, no legal reason why the crime of assault and battery may not be committed by driving an automobile on a public highway at a rate of speed that endangers the safety of other persons and actually results in such an injury. This being so it was not error for the trial court to deny the motion to acquit and the judgment of the Hudson Sessions is affirmed.